```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
BONNIE LUJAN,                                                    :
                                                                 :
                                Plaintiff,                       :
                                                                 :         24-cv-3479 (LJL)
                -v-                                              :
                                                                 :         OPINION AND ORDER
SENSIO COMPANY (US) INC., SENSIO INC., and                       :
GUANGDONG MEIMAN GROUP ZHUHAI MEIMAN                             :
ELECTRICAL APPLIANCE CO., LTD                                    :
                                                                 :
                                Defendants.                      :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/14/2025

LEWIS J. LIMAN, United States District Judge:

Plaintiff Bonnie Lujan ("Plaintiff") alleges she was injured when a pressure cooker manufactured and sold by Defendants Sensio Company (US) Inc., Sensio, Inc., (together with Sensio Company (US) Inc., "Sensio Defendants," or "Moving Defendants"), and Guangdong Meiman Group Zhuhai Meiman Electrical Appliance Co., Ltd. ("Guangdong Meiman") exploded suddenly and without warning, "causing scalding hot liquid, contents and steam to fly out of the Pressure Cooker and onto Plaintiff." Dkt. No. 16 ("Am. Compl.") ¶ 17. She brings claims against Defendants for strict product liability, negligence, breach of express warranty, breach of implied warrant of merchantability, breach of implied warranty of fitness for a particular purpose, and failure to warn. *Id.* ¶¶ 20–99. The Sensio Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss this case for lack of subject matter jurisdiction. Dkt. No. 49.

Plaintiff alleges this Court has jurisdiction over the subject matter presented by her complaint pursuant to 28 U.S.C. 1332(a)(1) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity of citizenship exists between the

parties. *Id.* ¶ 1. The Moving Defendants challenge whether the case satisfied the amount-in-controversy requirement.

For the following reasons, the motion to dismiss for lack of subject matter jurisdiction is denied.

## BACKGROUND

Because the Moving Defendants' jurisdictional challenge is fact-based, they may "proffer[] evidence beyond the [p]leading," and, if Moving Defendants show factual problems with the exercise of jurisdiction, Plaintiff "will need to come forward with evidence of [her] own to controvert that presented by the defendant[s]." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *see Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976). Therefore, the Court describes both the allegations of the complaint and the proffered evidence relevant to jurisdiction.

### I.  Allegations of the Complaint

Prior to January 7, 2024, Plaintiff purchased a Bella Electric Pressure Cooker, Model M-60B23G ("Pressure Cooker"). Am. Compl. ¶ 10. The Pressure Cooker is an electric kitchen appliance designed to prepare meals by cooking liquids inside a pot that produces steam. *Id.* ¶ 15. The steam is then trapped inside of the Pressure Cooker to create pressure. *Id*. Defendants "[are] and [were] the designer[s], manufacturer[s], producer[s], distributor[s], vendor[s], seller[s] of and/or marketing entit[ies] for the Pressure Cooker." *Id.* ¶¶ 11–13. The Sensio Defendants are Delaware corporations with principal places of business in New York, New York. *Id.* ¶¶ 3, 5. Guangdong Meiman is a Chinese corporation with a principal place of business in Guandong, China. *Id.* ¶ 7. Plaintiff is and was a citizen of Colorado. *Id.* ¶ 2. There is no dispute that the case satisfies the diversity of citizenship requirement.

On or about January 7, 2024, Plaintiff was using the Pressure Cooker to prepare a meal. *Id.* ¶¶ 16–17. When Plaintiff attempted to open the Pressure Cooker, it exploded. *Id.* ¶ 17. As a result of the explosion, Plaintiff experienced physical contact with hot liquid, contents, and steam. *Id.* Plaintiff alleges that as a "direct and proximate result of the explosion of the Pressure Cooker and the expulsion of scalding contents therefrom," she suffered "severely painful and disfiguring second degree burns to the body, and resulting pain and suffering, discoloration and hyperpigmentation to the body, disability, mental anguish, embarrassment and humiliation, loss of capacity for the enjoyment of life, and medical and nursing care and treatment." *Id.* ¶ 19. Plaintiff alleges that her "injuries are either permanent or continuing in nature, and [that she] will suffer the losses and impairment in the future." *Id.* Plaintiff is seeking compensatory damages for various medical bills, lost wages, and future pain and suffering, mental anguish, physical impairment and disfigurement. *Id.* ¶ 36.

## II.     Evidence Produced in Discovery

Plaintiff was treated in the emergency room at Rio Grande Hospital. *See* Dkt. No. 50-1 at 44:23–45:13, 46:11–18. Plaintiff's clinical report noted that she suffered from "[m]ostly first degree burn with two spots of second degree burn on left breast and left upper chest, both spots starting to blister." Dkt. No. 50-2 at 3. The burns covered seven percent of her total body surface. *Id.* at 4. Plaintiff had a follow-up appointment with the Wound Care department at the hospital the next day, at which point her chest was "completely blistered." Dkt. No. 50-1 at 51:19–53:17. She was given ointments and told to keep the area wrapped with sterile gauze. *Id.* at 53:6–9. Plaintiff had another appointment with Wound Care a week later, at which point she was given new medication because the area was not healing properly. *Id.* at 54:10–56:12.

3

Plaintiff was absent from work for fifty minutes to receive medical treatment. *Id.* at 95:10–12. Plaintiff's wages are $17.70 an hour. *Id.* at 94:22–24. The medical bill from Rio Grande Hospital was $1,966.69, and the bill from Wound Care was $478.04. Dkt. No. 50-3 ¶ 2.

In addition to her physical injuries, Plaintiff states that she suffers from post-traumatic stress disorder. *See* Dkt. No. 50-1 at 96:12–18. She is not receiving treatment for such disorder and does not have a formal diagnosis, but states that she can no longer use pressure cookers and her husband will handle "anything hot or steamy," because she otherwise suffers from flashbacks. *Id.* at 96:12–24. Plaintiff also claims that she has become self-conscious due to her physical disfigurement and will wear clothing to cover the scarring and avoid questioning from others. *Id.* at 97:9–19.

## PROCEDURAL HISTORY

Plaintiff filed the original complaint in this case on May 6, 2024. Dkt. No. 1. The Sensio Defendants answered the complaint on May 30 and 31, 2024. Dkt. Nos. 13, 15. Plaintiff then filed an amended complaint ("Amended Complaint") on June 3, 2024, which added Guangdong Meiman as a defendant. Dkt. No. 16. Guangdong Meiman has not appeared in this action.

The Sensio Defendants answered the Amended Complaint on June 24, 2025. Dkt. Nos. 21–22. The parties are currently in discovery. The deadline for completion of fact discovery is September 2, 2025. Dkt. No. 44. The deadline for completion of all discovery is October 15, 2025. *Id.*

The Sensio Defendants filed their motion to dismiss on February 7, 2025. Dkt. No. 48. The same day, they filed a memorandum of law in support of the motion, a declaration of counsel with four exhibits, a proposed order, and a certificate of service. Dkt. No. 49–52. On February 11, 2025, Plaintiff filed a memorandum of law in opposition. Dkt. No. 54. On

February 18, 2025, the Sensio Defendants filed a reply memorandum in support of the motion, a declaration of counsel with one exhibit, and a certificate of service.  Dkt. Nos. 55–57.

## LEGAL STANDARD

A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (citation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'" *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)).

Where the defendant challenges the legal sufficiency of a complaint's allegations, a court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party.  *See Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001).  However, where the jurisdictional challenge is fact-based, the defendant may "proffer[] evidence beyond the [p]leading." *Carter*, 822 F.3d at 57 (quoting *Exch. Nat'l Bank*, 544 F.2d at 1131).  In that case, a plaintiff may "'come forward with evidence of their own to controvert that presented by the defendant,' or may instead 'rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.'" *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter*, 822 F.3d at 57).

## DISCUSSION

Moving Defendants argue that the Court lacks subject-matter jurisdiction because, based on her responses to interrogatories and deposition testimony, Plaintiff's damages for medical bills and lost wages cannot exceed $2,459.48. Dkt. No. 49 at 3. Plaintiff does not dispute this calculation of her economic damages. *See* Dkt. No. 49 at 7. However, Plaintiff asserts that her noneconomic damages and physical impairment damages may be greater than $75,000. *Id.*

The party invoking federal jurisdiction must establish to a "reasonable probability" that the amount in controversy exceeds $75,000. *Smulley v. Safeco Ins. Co. of Ill.*, 2022 WL 16753118, at *1 (2d Cir. Nov. 8, 2022) (quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975)). This burden is "hardly onerous," for there is "a rebuttal presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). In order to overcome this presumption, the party opposing jurisdiction must show "to a legal certainty" that the amount recoverable is below the jurisdictional threshold. *Wolde-Meskel*, 166 F.3d at 63. The Second Circuit has "set a high bar for overcoming this presumption." *Scherer*, 347 F.3d at 397. "[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Id.* (quoting *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chi.*, 93 F.3d 1064, 1070–71 (2d Cir. 1996)).

In determining what it means to show to a "legal certainty" that the amount recoverable is below the jurisdictional amount, the amount in controversy is measured as of the date of the complaint. *See id.* This means that "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938) (citations omitted); *see*

*also Wolde-Meskel*, 166 F.3d at 63 (subsequent events "such as a valid defense offered by the defendant, or actual recovery in an amount less than the minimum jurisdictional amount" do not oust jurisdiction). Revelations in discovery that "illustrate[] a mistake in the complaint with respect to the amount in controversy" may defeat jurisdiction in some circumstances. *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 507 (2d Cir. 2005) (citing *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994)). However, the failure of a plaintiff to prove his asserted damages does not necessarily give rise to a dismissal of the case without prejudice for lack of jurisdiction. *See St. Paul Mercury*, 303 U.S. at 289 ("The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction."). Moreover, when a complaint merely asserts damages that are uncertain, as opposed to mistaken, any "doubt should be resolved in favor of the plaintiff's pleadings." *Id.* (quoting *Tongkook*, 14 F.3d at 785); *see GW Holdings Grp., LLC v. U.S. Highland, Inc.*, 794 F. App'x 49, 51 (2d Cir. 2019).

Moving Defendants argue that the information revealed in discovery shows as a matter of legal certainty that the amount recoverable is below the jurisdictional threshold. *See* Dkt. No. 49 at 5. This argument relies on Plaintiff's deposition testimony and interrogatory responses showing that her lost wages and medical expenses total only $2,459.48. Dkt. No. 49 at 3. Plaintiff argues that Moving Defendants "fail to address . . . future pain and suffering, mental anguish, physical impairment and disfigurement." Dkt. No. 54 at 5.

Plaintiff is correct. Because of Plaintiff's claim for noneconomic and physical disfigurement damages, Defendants cannot show to a legal certainty that the amount in controversy is less than $75,000.

Colorado law governs the damages Plaintiff may recover in this case. *See Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013) ("[U]nder New York law, it is well-established that the situs of a product liability tort for choice-of-law purposes is the place of the injury." (citation omitted)). "There are three separate categories of loss for which damages may be awarded in a personal injury action in Colorado—economic damages, noneconomic damages, and damages for physical impairment or disfigurement." *Nelson v. United States*, 2014 WL 1929585, at *13 (D. Colo. May 14, 2014). Noneconomic damages include "nonpecuniary harm . . . including pain and suffering, inconvenience, emotional distress, and impairment of the quality of life." Colo. Rev. Stat. § 13–21–102.5(2)(b). Colorado law also recognizes a separate category for physical impairment and disfigurement damages as a "necessary and important element in making an injured plaintiff whole." *Pringle v. Valdez,* 171 P.3d 624, 631 (Colo. 2007). "If someone tortiously inflicts a permanent injury on another he or she has taken away something valuable which is independent and different from other recognized elements of damages such as pain and suffering and loss of earning capacity." *Id.* "For this invasion the plaintiff should be awarded a separate sum in addition to the compensation for the other elements and such recovery should be proportional to the severity of the injury." *Id.*

There is no precise formula for calculating noneconomic damages or physical impairment damages, and juries are instructed to "be guided by common sense." *Fresquez v. BNSF Ry. Co.*, 52 F.4th 1280, 1316–17 (10th Cir. 2022). Psychological injuries such as post-traumatic stress disorder, depression, and anxiety may be relevant to the assessment of noneconomic damages, *see Dolenz v. United States*, 443 F.3d 1320, 1323 (10th Cir. 2006), and medical testimony is not required to show pain and suffering, *see Anderson v. Watson*, 953 P.2d 1284, 1289 (Colo. 1998); *Fresquez*, 52 F.4th at 1318 (finding that a Colorado jury's award of $800,000 for compensatory

damages did not shock judicial conscience even though the plaintiff "admitted to never having seen a therapist" and "presented no expert testimony regarding his emotional distress"). There is also no precise definition or threshold for physical impairment and disfigurement. *See* Colorado Pattern Civil Jury Instruction 6:1, CJI-Civ. 6:1, n.9 (2023) ("The terms 'physical impairment' and 'disfigurement' are not expressly defined in section 13-21-102.5 or in any appellate decision."); *see also Wolven v. Velez*, 2024 COA 8, 547 P.3d 423, 430 (noting that "the Colorado Supreme Court chose not to provide a definition for 'physical impairment' even when discussing the term at length" (citing *Pringle*, 171 P.3d at 631)), *cert. denied*, 2024 WL 4536292 (Colo. Sept. 3, 2024).

Plaintiff claims she suffered "severely painful and disfiguring second degree burns to the body, and resulting pain and suffering, discoloration and hyperpigmentation to the body, disability, mental anguish, embarrassment and humiliation, loss of capacity for the enjoyment of life, and medical and nursing care and treatment" as a result of her injury. Dkt. No. 16 ¶ 19. These allegations meet Plaintiff's initial burden to establish the amount in controversy. Second-degree burns requiring medical attention are not trivial, and a jury has wide latitude to award noneconomic damages based on a Plaintiff's pain and suffering. Indeed, jury awards in excess of the $75,000 threshold have been upheld in similar cases. *See Gibbs v. United States*, 599 F.2d 36, 39 (2d Cir. 1979) (upholding award of $170,000 to plaintiff who sustained first and second degree burns covering ten percent to fifteen percent of his body); *Beck v. Spinner's Recreational Ctr., Inc.*, 912 N.Y.S.2d 364, 365–66 (4th Dep't 2010) (allowing damages for past pain and suffering of $90,000 to plaintiff who sustained first and second degree burns to approximately three to four percent of his neck, back and chest). When a complaint asserts uncertain damages, "the doubt should be resolved in favor of the plaintiff's pleadings." *Tongkook*, 14 F.3d at 785.

The evidence produced in discovery does not change this conclusion by establishing "to a legal certainty" that Plaintiff cannot recover $75,000. *Scherer*, 347 F.3d at 397. The evidence produced in discovery supports that Plaintiff's economic damages total $2,459.48. Dkt. No. 1 at 95:10–12, 94:22–24 (testimony supporting damages for 50 minutes of lost wages at $17.70/hour); Dkt. No. 50-3 ¶ 2 (interrogatory responses listing damages as $1,966.69 for hospital treatment and $478.04 for treatment at Wound Care). However, the evidence does not show to a legal certainty that Plaintiff cannot recover $73,000 or more in noneconomic damages and damages for physical impairment or disfigurement. Plaintiff's medical records indicate that suffered from first and second degree burns on her chest, head, neck, forearm, and hand covering a total of seven percent of her body. Dkt. No. 50–2 at 3–4. The burns caused blistering and required several follow-up visits. Dkt. No. 50-1 at 51:19–53:17, 53:6–9. Plaintiff claims to suffer from lasting distress and flashbacks. *See* Dkt. No. 50-1 at 96:12–18. Plaintiff also states that she is self-conscious of scars from the burns and has modified her dress so at to avoid questions. *Id.* at 97:9–19. This evidence does not contradict, but rather is largely consistent with, Plaintiff's allegations of lasting injury causing mental pain and suffering. *See Katz*, 872 F.3d at 119 (noting that the a plaintiff may "rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." (quoting *Carter*, 822 F.3d at 57)). Moving Defendants have not established to a legal certainty that a jury could not properly award Plaintiff $75,000 in noneconomic and physical impairment damages.

Moving Defendants contend that the jurisdictional requirement cannot be met because Plaintiff cannot "maintain a claim for emotional distress or mental anguish." Dkt. No. 49 at 11. Moving Defendants cite to *Colwell v. Mentzer Invs., Inc.*, 973 P.2d 631, 638 (Colo. App. 1998)

and *Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 242 (Colo. 2003) for the proposition that a plaintiff cannot recover for emotional distress absent a physical manifestation such as nausea, lightheadedness, confusion, trembling. *Id.* However, neither case is apposite. *Colwell* concerned a claim being tried only on negligent infliction of emotional distress ("NIED") where the plaintiff did not suffer direct physical harm. 973 P.2d at 635.[1] Similarly, in *Giampapa* the court was addressing recovery for "mental distress damages alone, meaning mental distress damages unaccompanied by physical or pecuniary loss." 64 P.3d at 239. This is not a claim for mental distress alone—Plaintiff sustained a physical injury, and her mental pain and suffering resulted from that physical injury. It is indisputable that damages for pain, suffering, and mental distress are recoverable as compensation for a plaintiff's physical injury. *See, e.g.*, *Houston v. United States*, 2021 WL 613606, at *6 (D. Colo. Feb. 17, 2021) (in a personal injury action, "noneconomic damages are intended to compensate for pain and suffering, inconvenience, emotional distress, and impairment of the quality of life" (citing Colo. Rev. Stat. Ann. § 13-21-102.5(2)(b))).

Moving Defendants also heavily rely on *Agnesini v. Doctor's Assocs., Inc.*, 2012 WL 5873605 (S.D.N.Y. Nov. 13, 2012). *See* Dkt. No. 49 at 5–8. In *Agnesini*, two plaintiffs alleged personal injuries sustained from metal knives baked into their fast-food sandwiches. 2012 WL

---

[1] *Colwell* explained that to support an NIED claim under Colorado law, the "defendant's negligence [must] create[] an unreasonable risk of physical harm and cause[] plaintiff to be put in fear for her own safety . . . [plaintiff's] fear must have had physical consequences or resulted in long-continued emotional disturbance, and [] plaintiff's fear must have been the cause of the damages she claimed." *Colwell*, 973 P.2d at 638. "[S]uch a claim requires proof that the plaintiff sustained physical injury or was in the 'zone of danger.'" *Id.* (quoting *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 880 n.3 (Colo. 1994)). The crux of an NIED claim is that it is the emotional distress caused by defendant's negligence that causes a subsequent physical harm to plaintiff, rendering a need to prove physical injury accompanied by the mental distress. Unlike the plaintiff in *Colwell*, the Plaintiff here suffered a direct physical injury, and thus does not bring an NEID claim.

11

5873605, at *1.  The question before the court was whether the damages for their personal injuries could clear the $75,000 threshold for subject matter jurisdiction.  *Id.*  One of the plaintiffs experienced "stomach cramps and five or six episodes of diarrhea throughout the day" after eating a portion of the sandwich.  *Id.* at *2.  "Approximately one day after experiencing these conditions, [the plaintiff] sought medical attention by visiting a doctor."  *Id.*  By that point, [the plaintiff] was no longer experiencing any symptoms or discomfort."  *Id.*  No treatment was prescribed and the conditions did not reoccur."  *Id.*  The court found that discomfort which lasted for "at most . . . a period of two days" could not justify an award approaching $75,000.  *Id.* at *3.  The other plaintiff "sustained a 'serious' cut and fractured her left front tooth," leading her dentist to recommend a tooth replacement.  *Id.* at *3–4.  The court found that this plaintiff's economic damages totaled only a few thousand dollars, and that she could not recover damages for mental anguish under applicable North Carolina law.[2]

The analogy to this case is not persuasive.  As to the first plaintiff, *Agnesini* reasoned that the alleged injury was insignificant on its face.  *See id.* at *3.  The same cannot be said for Plaintiff's first- and second-degree burns in this case, which have resulted in continued physical disfigurement.  As to the second plaintiff, *Agnesini* relied on a legal holding that under North Carolina law, the plaintiff could recover only economic damages.  *Id.* at *4.  Colorado law,

---

[2] This plaintiff claimed damages for mental anguish suffered as a result of experiencing anxiety related to fast food products.  *Id*. at *4.  Under North Carolina law, plaintiffs must suffer from "severe emotional distress as a proximate result of the defendant's negligence" in order to recover damages.  *Id.* (quoting *Johnson v. Ruark Obstetrics & Gynecology Associates*, *P.A*., 395 S.E.2d 85, 97 (N.C. 1990)).  "[T]he term severe emotional distress means any emotional or mental disorder . . . or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so."  *Id.* (citation omitted).  Because the plaintiff "never sought treatment for her anxiety, nor [did] she offer[] any evidence of another severe and disabling condition diagnosed by a professional," the Agnesini determined there was not sufficient evidence to support damages for mental anguish.  *Id.*

12

which is applicable here, does not set such a high threshold to recover for pain and suffering. *See Anderson*, 953 P.2d at 1289 (holding that medical testimony is not required to prove pain and suffering); *Fresquez*, 52 F.4th at 1318 (finding that a Colorado jury's award of $800,000 for compensatory damages did not shock judicial conscience even though the plaintiff "admitted to never having seen a therapist" and "presented no expert testimony regarding his emotional distress").[3] Plaintiff here may recover noneconomic damages, and her injury is not so insignificant as to create a legal certainty that such damages cannot meet the jurisdictional minimum.

Ultimately, juries are provided with wide latitude in calculating compensatory damages. Given that Plaintiff claims damages for non-trivial mental anguish and physical disfigurement, Moving Defendants cannot establish with legal certainty that the Plaintiff will be unable to meet the $75,000 jurisdictional amount.

## CONCLUSION

The motion to dismiss is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 48.

SO ORDERED.

Dated: March 14, 2025
New York, New York

LEWIS J. LIMAN
United States District Judge

---

[3] Moreover, unlike Colorado, neither New York nor North Carolina law recognize physical disfigurement as a separate category of injury. *See Bartoli v. Asto Const. Corp.*, 802 N.Y.S.2d 463, 464 (2d Dep't 2005) (ordering a new trial for damages "[s]ince a disfigurement, such as the scar suffered by the plaintiff, is not a separate element of damages deserving a distinct award but is, instead, only a factor to be considered by the jury in assessing damages for conscious pain and suffering"); *Shaver v. United States*, 319 F. Supp. 2d 649, 668 (M.D.N.C. 2004) ("When awarding damages in a personal injury action, the fact finder's ultimate task is to somehow assign a monetary value to the injured party's intangible losses attributable to pain, suffering, disfigurement and disablement, and arrive at a *lump sum* amount." (emphasis added)). This provides additional reason to believe Plaintiff's damages here could be more significant than the potential damages in *Agnesini*.

13